# United States Court of Appeals for the Federal Circuit

---

**ANTENNASYS, INC.,**
*Plaintiff-Appellant*

**v.**

**AQYR TECHNOLOGIES, INC., WINDMILL INTERNATIONAL, INC.,**
*Defendants-Appellees*

---

2019-2244

---

Appeal from the United States District Court for the District of New Hampshire in No. 1:17-cv-00105-PB, Judge Paul J. Barbadoro.

---

Decided: October 7, 2020

---

STEVEN JAY GROSSMAN, Grossman Tucker Perreault & Pfleger, PLLC, Manchester, NH, for plaintiff-appellant.

LAURA CARROLL, Burns & Levinson LLP, Boston, MA, for defendants-appellees. Also represented by ERIC G.J. KAVIAR.

---

Before O'MALLEY, BRYSON, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

There is little more frustrating for a district court judge than to have the parties jointly lead you down a wrong, and possibly unnecessary, path. That is what occurred here. Unfortunately, many threshold issues that may have obviated the need for either claim construction or an infringement verdict remain unresolved. At first blush, this is a patent infringement case, with the only dispute before us concerning the district court's construction of one claim term in United States Patent No. 7,432,868 ("the '868 patent"). But it is equally likely that Plaintiff's sole federal question count (patent infringement) is predicated on an impermissible theory of liability and that the district court had no jurisdiction over the remaining state law claims. Recognizing that we do not have the benefit of a complete factual record on some of the underlying questions, we vacate and remand.

## BACKGROUND

This case comes to us from the United States District Court for the District of New Hampshire's grant of summary judgment for Windmill International, Inc. and AQYR Technologies, Inc. (collectively, "Defendants") on Plaintiff AntennaSys, Inc.'s patent infringement and related state law claims. The '868 patent, directed to portable antenna positioners, has two named inventors. The inventors each assigned their interest in the patent to their respective employers—AntennaSys and Windmill. The parties entered into a license agreement pursuant to which Windmill acquired an exclusive license to AntennaSys's one-half interest in the patent in two separate markets—the United States Federal Marketplace (sales to the United States Government) and the commercial marketplace (sales outside the Federal Marketplace). J.A. 108–09.

In exchange for the exclusive right and license in the commercial marketplace to AntennaSys's interest in the patent, Windmill agreed to pay AntennaSys three percent of the gross sales price for each unit of products covered by

the patent. Under Section 4.A.4 of the agreement, if Windmill fails to meet certain minimum sales requirements in the commercial marketplace, its exclusive license to AntennaSys's interest becomes non-exclusive. J.A. 109. If that occurs, either party has the right to exploit the patent in the commercial marketplace, just as they would in the absence of any agreement. As to enforcement of the patent, the agreement provides that, if Windmill loses its exclusivity, either party has the right to commence a lawsuit against "third party" infringers. J.A. 111. The parties do not dispute that Windmill did, in fact, fail to meet the sales requirements of the agreement, such that its license to AntennaSys's one-half interest in the patent should now be non-exclusive.

As part of this transaction, the parties also agreed that "Windmill shall create" an LLC and "shall own the entire membership interest in the LLC." J.A. 108. This LLC was to own both Windmill's own interest in the patent and Windmill's license to AntennaSys's interest in the patent. There appears to be no dispute that Windmill did create such an LLC, called GBS Positioner LLC.

In March 2017, AntennaSys sued AQYR Technologies, Inc., Windmill's wholly-owned subsidiary, for infringement of the '868 patent. It separately filed an arbitration claim against Windmill based on an alleged failure to pay royalties for sales of the accused products pursuant to the license agreement. The parties agreed to dismiss the arbitration without prejudice and to proceed in district court in the same suit that AntennaSys had filed against AQYR. Accordingly, the amended complaint contains five state law counts (against Windmill, AQYR, or both defendants), and one count of patent infringement (against AQYR). Following claim construction, AntennaSys conceded that it could not prevail on its patent infringement claim under the court's construction of one of the claim terms. Apparently motivated by a desire to moot AQYR's affirmative defenses of invalidity and unenforceability of

the patent in suit, AntennaSys sought summary judgment of non-infringement. J.A. 1170–71. AntennaSys asserted that the court's construction of the disputed claim term precludes it "from advancing [both] a patent infringement liability case against defendants as well as . . . state law claims." J.A. 1172. After conducting a hearing—during which AntennaSys agreed that it could not succeed on any of its state law claims absent a finding of patent infringement—the district court entered judgment for Windmill and AQYR. J.A. 1 n.1; J.A. 1369–99. AntennaSys timely appealed.[1]

## DISCUSSION

In reviewing the grant of a motion for summary judgment we apply the law of the regional circuit in which the district court sits, here, the First Circuit. *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1295 (Fed. Cir. 2014). The First Circuit reviews a grant of summary judgment de novo. *Santiago-Diaz v. Rivera-Rivera*, 793 F.3d 195, 199 (1st Cir. 2015).

On appeal, AntennaSys challenges the district court's claim construction. Defendants argue, however, that we

---

[1]    Defendants filed a notice of cross-appeal, but AntennaSys moved to dismiss that cross-appeal as improperly directed to AQYR's affirmative defense of patent invalidity. We granted AntennaSys's motion, explaining that it was improper for AQYR to pursue its cross-appeal because the judgment was entirely in AQYR's favor and the district court "did not enter a final judgment against AQYR on invalidity, but only issued a claim construction order briefly touching upon the issue of indefiniteness[.]" Order, *AntennaSys, Inc. v. AQYR Techs., Inc.*, No. 19-2244, at *3 (Fed. Cir. Dec. 5, 2019). Notably AQYR did not seek a declaratory judgment of invalidity, asserting invalidity only as an affirmative defense to the claim of infringement.

need not address the merits of this appeal because AntennaSys "lacks standing" to bring a patent infringement claim absent joinder of Windmill as a co-plaintiff. As discussed below, although Defendants' arguments are based on an incorrect view of current law, we agree that, in this case, whether a patent co-owner must be joined is a threshold issue that must be resolved first. We conclude, moreover, that no judgment on infringement should be entered without first resolving AQYR's affirmative defense that it was authorized by a co-owner to practice the '868 patent. This is important because, if AQYR was never a proper party to these proceedings, as noted below, the district court had no jurisdiction over them.

## A.

Absent agreement to the contrary, "each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners." 35 U.S.C. § 262. We have explained that "the congressional policy expressed by section 262 is that patent co-owners are at the mercy of each other." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (internal quotations omitted). Thus, "by granting a license . . . a patent co-owner can effectively deprive its fellow co-owner of the right to sue for and collect any infringement damages that accrue after the date of the license," but not already-accrued damages for past infringement. *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997).

"An action for infringement," moreover, "*must join as plaintiffs* all co-owners." *Ethicon*, 135 F.3d at 1467 (emphasis added). We have recognized two exceptions to this statutory requirement: (1) "when any patent owner has granted an exclusive license, he stands in a relationship of trust to his licensee and must permit the licensee to sue in his name;" and (2) "[i]f, by agreement, a co-owner waives

his right to refuse to join suit, his co-owners may subsequently force him to join in a suit against infringers." *Ethicon*, 135 F.3d at 1468 n.9 (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 469 (1926) and *Willingham v. Lawton*, 555 F.2d 1340, 1344–45 (6th Cir. 1977)). We have also held that a non-consenting co-owner or co-inventor can never be involuntarily joined in an infringement action pursuant to Rule 19 of the Federal Rules of Civil Procedure because "the right of a patent co-owner to impede an infringement suit brought by another co-owner is a substantive right." *STC.UNM v. Intel Corp.*, 754 F.3d 940, 946 (Fed. Cir. 2014).[2]

Citing the above legal principles, Defendants assert that we lack jurisdiction over this appeal because AntennaSys "lacks standing" to sue for infringement absent joinder of Windmill as a co-plaintiff. Appellees' Br. 12–13. And, AQYR separately asserts that it was authorized by Windmill to practice the '868 patent as a licensee. *Id.* at 17 n.10. We note, as we have in other recent cases, that, following the Supreme Court's guidance in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014), it is improper to discuss requirements for establishing a statutory cause of action in terms of "standing." *See, e.g., Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020)

---

[2]    We are bound by the existing law of this Circuit on this point. As I explained in my opinion dissenting from the denial of the petition for rehearing en banc in *STC.UNM v. Intel Corp.*, 767 F.3d 1351, 1358–67 (Fed. Cir. 2014) (O'Malley, J., dissenting), however, and in my concurrence in *Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1319–26 (Fed. Cir. 2018) (O'Malley, J., concurring), I continue to disagree with the court's declaration of a substantive patent right that trumps application of Rule 19.

("Supreme Court precedent ma[kes] clear that our earlier decisions treating the prerequisites of the Patent Act as jurisdictional were wrong."); *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) ("[S]o-called 'statutory standing' defects do not implicate a court's subject-matter jurisdiction[.]"). AntennaSys's failure to join Windmill as a co-plaintiff impacts AntennaSys's ability to satisfy the statutory prerequisites for bringing an infringement suit; it does not impact AntennaSys's Article III standing. As we explained in *Ethicon*, the rule that a patent co-owner may refuse to voluntarily join suit, thereby frustrating an infringement suit by another co-owner, "finds support in section 262 of the Patent Act[.]" 135 F.3d at 1468. Thus, contrary to characterizations of the issue in our pre-*Lexmark* case law, the statutory requirements of section 262 are not jurisdictional in nature.

Despite their non-jurisdictional nature, we agree that whether AntennaSys meets these statutory prerequisites for bringing an infringement claim is a threshold question that both we and the district court must resolve before reaching the district court's claim construction and summary judgment rulings. Put simply, if AntennaSys does not meet the statutory requirements for bringing its patent infringement claim against AQYR, either because Windmill was not joined as a co-plaintiff or because AntennaSys does not adequately state a claim under the Patent Act against AQYR, we need not delve into the district court's claim construction.[3]

---

[3]    As we explain below, this holds true even in the presence of AntennaSys's state law claims that require an underlying finding of infringement.

B.

Having determined that we must address Defendants' § 262 argument as a threshold issue, we consider whether: (1) Defendants waived their § 262 challenge; and (2) Defendants' substantive arguments have merit.

We first consider whether Defendants have waived their § 262 challenge by failing to raise the argument earlier. Defendants' only explanation in this regard is that "[t]he lack of standing issue became of practical importance only after AntennaSys dismissed its state law claims to secure the ability to appeal." Appellees' Br. 5 n.2. As discussed above, this is not an issue of a lack of subject matter jurisdiction—a defense that may be considered at any point in the proceeding. As we explained in *Lone Star*, "following *Lexmark*, several courts have concluded that motions to dismiss based on 'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in recognition of the fact that such defects are not jurisdictional." *Lone Star*, 925 F.3d at 1235. Under Rule 12(h)(2), moreover, the defense of failure to state a claim for relief may be asserted in a responsive pleading or a motion for judgment on the pleadings, or in a motion to dismiss at trial. *See* Charles Alan Wright & Arthur R. Miller, *5C Fed. Prac. & Proc. Civ.* § 1392 (3d ed.). And as the First Circuit has held, such a defense may not be presented for the first time on appeal absent "unusual circumstances." *See Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 357 (1st Cir. 1989); *Brule v. Southworth*, 611 F.2d 406, 410 (1st Cir. 1979) (failure to contest issue of whether plaintiffs had made out a federal claim in the district court, "must be taken as conce[ssion] that plaintiffs did state a claim, and we accordingly find the issue foreclosed on appeal").

Constricting our ability to resolve the issue, however, is the procedural path through which this case came to us on appeal. The district court's grant of summary judgment depended on concessions the parties made during a hearing

following AntennaSys's motion for summary judgment. *See* J.A. 1372–1374. Thus, depending on the nature of those concessions, and the court's interactions with the parties, it may be that Windmill has not waived this defense because it remained live pending a trial that never occurred or that this case presents "unusual circumstances" warranting consideration of the issue even after final judgment. We decline to read into the appellate record a waiver that the district court is better positioned to address.

We note, moreover, that, even if Windmill did waive its right to assert its ability as a co-owner to refuse to join an infringement suit against AQYR, AntennaSys does not assert that AQYR waived any of its affirmative defenses. Specifically, there is no assertion or indication in the record that AQYR waived the claim that it is a non-infringer by virtue of its alleged license to practice the patent. Thus, whether Windmill waived any of its rights may be irrelevant if AQYR, which appears to be a separately incorporated entity (whether wholly-owned or not), did not waive its own rights. Again, the current record prevents us from making this determination.

Unfortunately, the parties' substantive arguments as to joinder of Windmill as a co-plaintiff fare no better. Defendants argue that, as a mere co-owner, AntennaSys may neither sue AQYR for infringement on its own, nor join Windmill as an involuntary co-plaintiff. Appellees' Br. 12. They also allege that neither of our two recognized exceptions to the requirement of joinder of a patent co-owner apply in this case—*i.e.*, this is neither an infringement suit brought by an exclusive licensee, nor is there a contractual waiver of Windmill's right to refuse to join suit. *Id.* at 18–19 (citing *STC.UNM*, 754 F.3d at 946). As to the first exception, Defendants contend—and AntennaSys does not dispute—that AntennaSys is not Windmill's exclusive licensee. *Id.* at 19. As to the second exception, Defendants insist that Windmill never waived its right to refuse to join

suit as a co-owner of the patent, as required for Antennasys to proceed against AQYR in Windmill's absence. They contend that AQYR is not a "third party" within the meaning of the agreement because it is a wholly-owned subsidiary, such that the provision discussing AntennaSys's right to sue third parties cannot apply to claims against AQYR. *Id.*

In response, AntennaSys does not contend that AQYR is a third party under the agreement. Rather, it appears to ask that we recognize that the § 262 requirement of joinder of all co-owners does not apply in the circumstances of this case. It argues that, underlying the § 262 requirement, is the principle that an accused infringer is entitled to avoid multiple suits for the same acts on the same patents. Here, AntennaSys contends, there is no risk that Windmill, as a defendant and co-owner, can incur duplicate liability by suing its own subsidiary, and thus, there is no need to join Windmill as a co-plaintiff. Appellant's Reply Br. 12–13. In addition, AntennaSys argues that joinder of Windmill as a plaintiff-patentee is not required because the joinder rule does not apply "where the patentee is the infringer, and must sue itself." Appellant's Reply Br. 13-14 (citing *Ortho Pharm. Group v. Genetics Inst., Inc.*, 52 F.3d 1324, 1325 (Fed. Cir. 1995)). We conclude that neither sides' arguments help resolve the dispute.

In advancing their confusing and potentially meritless theories, the parties make certain critical omissions. Neither party addresses, in any meaningful way, Windmill's right as a co-owner, to license the '868 patent "without the consent of and without accounting to" AntennaSys. 35 U.S.C. § 262; *see also Schering Corp.*, 104 F.3d at 344–45 ("[T]he right to license" and "the right to bring suit for infringement of the patent without the other co-owner's voluntarily joining the suit," are "not incompatible, and the granting of one does not necessarily imply the relinquishment of the other."). Absent agreement to the contrary, Windmill had every right to license the patent, and to the

extent AQYR obtained an express or implied license from any patent co-owner, AQYR's activities are authorized and non-infringing. Accordingly, even if we were to conclude that AQYR is a third party within the meaning of the agreement (which, as noted, AntennaSys has not claimed), and that Windmill waived the right to refuse to join suit against third parties, we must also consider whether the agreement limits Windmill's right, under 35 U.S.C. § 262, to practice the '868 patent as a co-owner or AQYR's right to engage in duly licensed activity.

Our review of the agreement produces more confusion than clarity, however. The agreement provides that Windmill "shall create" an LLC, which is to own both Windmill's one-half undivided interest in the patent and Windmill's license in AntennaSys's interest in that same patent. J.A. 0108. The agreement further provides that Windmill "shall assign" the parties' agreement to the LLC. *Id.* There appears to be no dispute that Windmill did, in fact, create such an LLC, called GBS Positioner. In their briefing, the parties do not address GBS Positioner's role, nor do they explain why, as the presumptive co-owner-by-assignment of Windmill's interest in the '868 patent, GBS Positioner is not an indispensable party to this litigation.[4] The briefing and the record before us is also unclear on whether there exists an express or implied license from a patent co-owner to the alleged infringer. Citing to the pleadings, Windmill asserts that it has expressly permitted AQYR to practice the asserted patent, and that its provision of a product to AQYR to sell "extended an implied license to practice the '868 [p]atent." Appellees' Br. 17 n.10; *see also* J.A. 0200 (AQYR's Seventeenth Affirmative Defense stating its

---

[4] Defendants admit in their respective Answers that GBS Positioner "currently holds Windmill's one-half interest in *certain* patents." J.A. 0181 ¶14; J.A. 0192 ¶14 (emphasis added).

"activity is permitted by an express or implied license"). On the record before us, we cannot ascertain whether Windmill's (and AQYR's) assertion to that effect is true or whether GBS Positioner, the presumptive co-owner-by-assignment, granted AQYR an express or implied license to practice the patent in suit. Without the benefit of underlying factual findings from the district court, we refuse to address whether the agreement limits one patent co-owner's right to practice the patent in a way that prevents it from issuing a license to the alleged infringer, or whether the patent infringement claim should be dismissed because an express or implied license exists.

Accordingly, we remand for the district court to address these issues in the first instance. On remand, the district court should resolve all factual issues pertaining to AntennaSys's ability to bring its patent infringement claim against AQYR, including: (1) whether Windmill waived the right to object to AntennaSys's failure to meet the § 262 prerequisite, via the license agreement or otherwise; (2) whether GBS or Windmill holds or retains ownership interest in the '868 patent; (3) whether AntennaSys's patent infringement suit is barred under § 262 because there exists an express or implied license from the real patent owner to AQYR; and, (4) the timing of any such license.

C.

Finally, we address why, in the event AntennaSys's patent infringement claim against AQYR should be dismissed—either due to absence of a co-owner or the existence of an implied license from a co-owner to the accused infringer—the district court's claim construction may still be unnecessary.

Even where federal law does not create the cause of action asserted, federal jurisdiction extends to a "special and small category" of cases in which a well-pleaded complaint establishes that "a federal law issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and

(4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). AntennaSys argues that its state law claims provide "an independent basis for district court and appellate jurisdiction." Appellant's Reply Br. 7–12. Citing a case from this court that long predates *Gunn v. Minton*, it contends that, whenever a state-court claim requires a court to engage in claim construction, the claim necessarily arises under the Patent Act. Appellant's Reply Br. 8, 10 (citing *U.S. Valves Inc. v. Dray*, 212 F.3d 1368, 1372 (Fed. Cir. 2000)). We disagree.

At the very least, AntennaSys cannot meet the "substantiality" prong of the analysis. Substantiality looks to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A substantial federal issue may exist where (1) the federal issue is purely a question of law, rather than one that is "fact-bound and situation-specific"; (2) the Federal government has a direct interest in the issue, such as where the availability of a federal forum to vindicate the government's own administrative action is implicated; or, (3) if the court's resolution of the issue will control numerous other cases. *See NeuroRepair, Inc. v. The Nath Law Grp.*, 781 F.3d 1340, 1345 (Fed. Cir. 2015) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) and *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005)). These factors are non-exclusive and "none . . . is necessarily controlling." *Id.* Here, the federal issue—infringement of the patent in suit—is fact-bound and situation-specific. This case does not present a context-free interpretation of a patent statute, but requires merely that the court apply patent law to the facts of the case. As *Gunn* makes clear, it is not enough to suggest that there is an interest in uniform application of patent law, or that the federal courts are uniquely-situated to resolve the patent law question presented. *Gunn*, 568 U.S. at 261–62; *see also Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938

F.3d 1355, 1365–67 (2019).  If that were enough to support a finding of "substantiality," we would find jurisdiction in any case implicating a patent law issue.  Indeed, "state courts can be expected to hew closely to the pertinent federal precedents" in resolving the infringement dispute at issue.  *Gunn*, 568 U.S. at 262.  Finally, we do not believe resolution of this case would control numerous other cases.[5]

In sum, to the extent the district court concludes that AntennaSys's patent infringement claim—the sole federal question count in the lawsuit—should be dismissed, the district court had no independent jurisdiction over the state law counts in AntennaSys's complaint.  Accordingly, if the patent infringement count is dismissed, this case belongs in state court.[6]

## CONCLUSION

This exercise has been an extremely frustrating one for the court.  We suspect the district court will feel the same way.  But just as bad facts can make bad law, misdirected lawyering can do the same.  We refuse to take the parties' invitation to rule on these issues in the first instance and on an incomplete record.  For the foregoing reasons, we must vacate the district court's grant of summary judgment and remand for proceedings consistent with this opinion.

**VACATED AND REMANDED**

---

[5]    To the extent *U.S. Valves* is to the contrary, that precedent was abrogated by *Gunn* and our subsequent case law applying *Gunn*.

[6]    Because we are not privy to the parties' discussions regarding Windmill's waiver of arbitration, we express no view on the continued vitality of that waiver in light of our ruling.

## COSTS

The parties shall bear their own costs.